# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
**No. 24-229V**

|  |  |
|---|---|
| NAHED REFAAT, <br><br> Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Chief Special Master Corcoran <br><br> Filed: November 4, 2025 |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Emily Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On February 14, 2024, Nahed Refaat filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges (under the Vaccine Act Table) that she suffered from Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine she received on February 14, 2022. Pet. at 1.

Respondent's Rule 4(c) Report (filed on December 20, 2024,) set forth objections to the Table claim asserted herein. Respondent's Report, ECF No. 22. Respondent argues that the medical records support a more likely alternative diagnosis – chronic

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

inflammatory demyelinating polyneuropathy ("CIDP") - which means a Table claim is not viable.[3] *Id.* at 8-9.

In response to Respondent's arguments, on September 11, 2025, I ordered Petitioner to show cause why her Table GBS claim should not be dismissed. ECF No. 24. I explained that the record as it stands contains several items of evidence supporting a possible alternate "exclusionary" diagnosis for Petitioner's GBS – including CIDP. *Id.* at 3. More so, I noted that (while not the basis of the Order to Show Cause) Petitioner's reports of a two-day onset likewise do not support the Table's requirements for GBS, and her Table claim would thus fail either way. *Id.* at 3-4. In reaction, Petitioner filed a status report stating that she wishes to proceed with a causation-in-fact claim, and understands her case will be transferred out of SPU. ECF No. 25. Resolution of Petitioner's Table claim is now ripe for consideration.

## I.     Factual Background[4]

Petitioner's medical history is relevant for positive ANA testing in October 2020 and Sjögren's syndrome. Ex. 5 at 7-9; Ex. 6 at 30-31, 38. Petitioner received the subject flu vaccine on February 14, 2022, during an annual visit with her primary care provider ("PCP"). Ex. 2 at 25, 28.

In her witness declaration (authored in February 2024), Petitioner attests that "a few days after [her] flu vaccine," she had some body aches. Ex. 11 ¶ 4. Then, "seven to ten days after" vaccination, she "began to experience symptoms that [she] had never felt before[,]" including severe pain throughout her body, numbness, significant weakness, and fatigue. *Id.* She also described tingling in her feet, which made it difficult to walk or drive. *Id.*

On March 7, 2022, Petitioner had a telemedicine visit with her PCP and reported body aches that began a day or two after her February 14th visit and vaccination. Ex. 7 at 14. She also complained of bilateral lower extremity numbness (that had improved), pain radiating down the bilateral lower extremities, plus low back pain. *Id.*

The same day, Petitioner went to the ER complaining of body aches and tingling in her hands, feet, and knees/legs that began "[a] few days after receiving a flu vaccine 2 weeks ago." Ex. 6 at 30. Following a neurology consultation on March 8, 2022, and a

---

[3] Respondent also contended that the medical records establish a one-to-two-day onset of her injury, which is inconsistent with the Table's 3-42 window for a Table GBS claim. ECF No. 22 at 9-10.

[4] A more complete recitation of the facts can be found in the Petition and Respondent's Rule 4(c) Report. Although I have reviewed all of the records filed to date, I have limited my discussion in this Ruling to the records most relevant to the resolution of Petitioner's Table claim, with a particular focus on diagnosis and the onset of Petitioner's alleged injury, where appropriate.

normal head CT, the neurologist thought that Petitioner had "symptoms suggestive of [GBS]." *Id.* at 40.

While hospitalized, Petitioner had a consultation with a hematologist-oncologist. Ex. 6 at 42. The treater noted that Petitioner's white blood cell count was low the previous week and thus evaluated her for leukopenia. *See id.* Following an unremarkable brain MRI, the treater assessed Petitioner with GBS, possible leukopenia "due to GBS vs autoimmune d/o," Sjögren's syndrome, and a low/normal vitamin B12 level. *Id.* at 45. After treatment with three doses of IVIG, Petitioner was discharged the next day with "symptoms suggestive of [GBS]." *Id.* at 58.

On March 15, 2022, Petitioner had a visit with her PCP and noted ongoing tingling, weakness, and some chest pain since her hospital discharge. Ex. 2 at 11-12. The PCP assessed Petitioner with GBS (that had improved with IVIG) and "other neutropenia." *Id.* at 12.

Later that month (on March 23, 2022), Petitioner followed up with her neurologist. Ex. 3 at 9. The neurologist noted Petitioner's recent history of "symptoms of [GBS]," that she was treated with IVIG (during her hospitalization), "and her symptoms of paresthesias and weakness of the extremities improved somewhat." *Id.* Petitioner had "continued paresthesias in the face and pain in the legs when she exerts herself." *Id.* Petitioner's "ongoing diagnoses" included GBS and "chronic inflammatory demyelinating polyneuritis [CIDP]." *Id.* at 10. Despite both listed diagnoses, the treater's impression was that Petitioner's "symptoms [were] suggestive of [GBS] . . . as a result of influenza vaccination." *Id.* The neurologist prescribed weekly IVIG. *Id.*

At the direction of her neurologist, Petitioner underwent an EMG of the lower extremities on May 22, 2022. Ex. 3 at 13. The impression was "demyelinating polyneuropathy affecting the lower extremities" associated with "acute and chronic motor axon loss" in the bilateral lower extremities. *Id.* The neurologist thought "[t]his is consistent with a diagnosis of CIDP." *Id.*

During an October 31, 2022 neurology follow-up visit, Petitioner had ongoing paresthesias and weakness in her bilateral lower extremities. Ex. 8 at 5. The neurologist reiterated her earlier impression – that Petitioner had GBS and "[t]his was a result of influenza vaccination." *Id.* at 6. But the neurologist also noted that Petitioner "continue[d] to remain symptomatic and had CIDP." *Id.* Both GBS and CIDP were listed among Petitioner's "ongoing diagnoses." *Id.* There are no records of any subsequent treatment pertinent to Petitioner's GBS diagnosis or the onset of her post-vaccination injury.

## II.    Applicable Legal Standards

Under Section 13(a)(1)(A) of the Act, a petitioner must preponderantly demonstrate that all requirements for a petition set forth in section 11(c)(1) have been satisfied. A petitioner may prevail on her claim if the vaccinee for whom she seeks compensation has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If petitioner establishes that the vaccinee has suffered a "Table Injury," causation is presumed.

In order to qualify for a Table presumption of causation for GBS, a petitioner must establish that she experienced the onset of her symptoms within 3-42 days of the subject flu vaccination, and that she satisfies the criteria set forth in the Act's Qualifications and Aids to Interpretation ("QAIs"). 42 C.F.R. Section 100.3(c)(15). The QAIs require a showing of (A) bilateral flaccid limb weakness and decreased or absent deep tendon reflexes in weak limbs; (B) a monophasic illness pattern; (C) an interval between onset and nadir of weakness between 12 hours and 28 days; (D) subsequent clinical plateau (which leads to either stabilization at the nadir of symptoms or subsequent improvement without significant relapse); and (E) the absence of an identified more likely alternative diagnosis – including (in relevant part) CIDP and vasculitis. Sections 100.3(c)(15)(ii), (vi).

If, however, the vaccinee suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, petitioner must prove that the administered vaccine caused injury to receive Program compensation on behalf of the vaccinee. Section 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. Section 13(a)(1)(A). This standard is "one of . . . simple preponderance, or 'more probable than not' causation." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1279-80 (Fed. Cir. 2005) (referencing *Hellebrand v. Sec'y of Health & Human Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993). The Federal Circuit has held that to establish an off-Table injury, petitioners must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1351 (Fed. Cir 1999). *Id.* at 1352. The received vaccine, however, need not be the predominant cause of the injury. *Id.* at 1351.

The determination that a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Further, contemporaneous medical records are presumed to

4

be accurate and complete in their recording of all relevant information as to petitioner's medical issues. *Cucuras v. Sec'y of Health & Human Servs.*, 993, F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

**Analysis**

As articulated in my Order to Show Cause, Petitioner's medical records contain at least two proposed diagnoses: GBS and CIDP – with at least her treating neurologist opining that her EMG findings were consistent with CIDP as the most accurate diagnosis. Ex. 3 at 13. Thus, it is not facially evident that Petitioner did suffer from GBS, as alleged. Indeed, this record suggests that what may have been *thought* to be GBS initially was deemed later to be something else.

The presence of CIDP as an identified more likely alternative diagnosis precludes Petitioner from establishing a Table GBS claim, as her injury is inconsistent with the Table-defined version of GBS in the QAIs. Section 100.3(c)(15)(vi) ("[e]xclusionary criteria for the diagnosis of all subtypes of GBS include the ultimate diagnosis of any of the following conditions: chronic immune demyelinating polyradiculopathy (CIDP) . . . ."). For this reason, her Table GBS claim must be dismissed.

Because Petitioner has not demonstrated a GBS diagnosis consistent with the QAIs, I do not find it necessary to make a determination regarding onset at this time. I will note, however, there exist notations in the contemporaneous medical records that *could* support a one-to-two day onset of her overall injury.[5] *See,* e.g., Ex. 7 at 14 (reporting that she "noticed [b]ody-aches [sic] 1-2 days after last visit during which she received the flu shot, she also noticed numbness in [bilateral] lower ext[remities] off and on which since improved."). Although a claimant might seek to argue (on a non-Table basis) that a one-to-two-day onset was medically acceptable, more often than not such arguments fail.[6]

---

[5] On the other hand, there also exists at least one notation placing onset of her body aches and tingling in her hands, feet, and legs beginning a "few days after receiving a flu vaccine 2 weeks ago." Ex. 6 at 30. This notation thus *could* be interpreted in favor of onset occurring within the Table's 3-42 day window.

[6] *See, e.g.*, *Rowan v. Sec'y of Health & Human Servs.,* No. 17-760V, 2020 WL 2954954, at *16-19 (Fed. Cl. Spec. Mstr. Apr. 28, 2020) (finding a GBS onset sooner than three days post vaccination was not scientifically or medically supported by the record, given that GBS is known to be mediated by antibodies produced via the adaptive immune system, and this process takes longer than 3 days to result in symptoms); *Orton v. Sec'y of Health & Human Servs.*, No. 13-631V, 2015 WL 1275459, at *3-4 (Fed. Cl. Spec. Mstr. Feb. 23, 2015) (finding a 1-day onset of GBS following a flu vaccination was not substantiated by the evidence).

5

Only under special circumstances has such a short onset succeeded.[7] While these prior determinations do not control this outcome, they demonstrate that what is known medically/scientifically about the pathogenesis of GBS and weighs against findings of flu vaccine causality when the onset is too close temporally to the vaccination event.

Despite this, it certainly is not the case in the Program that a claimant can *never* establish a vaccine-caused peripheral neuropathy based on a very short onset. And here, it is conceivable that a non-Table claim could likewise be viable or, alternatively, that onset was actually later than one-to-two days post vaccination. However, expert support will be necessary for the resolution of a causation-in-fact claim and a determination regarding proper diagnosis and onset.

### Conclusion

Petitioner cannot proceed on a Table GBS claim in this matter, and therefore any such claim is hereby **DISMISSED.** Petitioner's remaining non-Table claim, however, may proceed. Because of the factual and medical issues to be decided (requiring amplification via experts), the claim is unlikely to be expeditiously resolved in SPU. For this reason, transfer is appropriate. **Pursuant to Vaccine Rule 3(d), the above-captioned case is hereby transferred out of SPU and reassigned randomly to a Special Master by the Clerk's Office. Further proceedings will be determined by the assigned Special Master.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[7] *See, e.g.*, *Lehrman v. Sec'y of Health & Human Servs.*, No. 13-901V, 2018 WL 1788477, at *14-19 (Fed. Cl. Spec. Mstr. Mar. 19, 2018) (finding entitlement for a petitioner who established a pre-vaccination history of an upper respiratory infection, which, in combination with the flu vaccination, was found to have resulted in an upregulation of the petitioner's immune system that led to a rapid onset of GBS and thus a 1-day onset was appropriate); *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352-53 (Fed. Cir. 1999) (finding that a petitioner must prove that the vaccine was a substantial factor – not the only factor – in causing the illness and that the harm would not have occurred in the absence of the vaccination).